OPINION. LeMire, Judge: Our question here is a narrow one. The petitioner was charged with violation of the price ceilings fixed by OPA and, under threat of a suit for treble damages and revocation of its slaughtering license, it agreed to pay, and did pay, to the Administrator of OPA $7,709 as the amount of the alleged overcharges. Our question is whether the amount so paid is deductible as an ordinary and necessary business expense under section 23 (a) of the Internal Revenue Code. The petitioner contends, first, that the amount in question was not a “penalty,” but was in the nature of civil damages and, therefore, should not be disallowed' for reasons of public policy. It argues, further, that in any event the deduction .is allowable because the payment was made in compromise of a baseless claim and under threats of coercion, and was for the purpose of protecting its business. As a general rule the deduction of a penalty imposed for violation of a penal statute is not allowable. See Great Northern Railway Co. v. Commissioner, 40 Fed. (2d) 372; Burroughs Bldg. Material Co. v. Commissioner, 47 Fed. (2d) 178; Standard Oil Co. v. Commissioner, 129 Fed, (2d) 363; and Helvering v. Superior Wines & Liquors, Inc., 134 Fed. (2d) 373. The decided cases do not follow any clear-cut rule as to whether payments made in satisfaction of violations, or alleged violations, of OPA regulations are penal or are in the nature of civil damages. See Brown v. Cummins Distilleries Corporation, 56 Fed. Supp. 941; Bowles v. Beatrice Creamery Co., 56 Fed. Supp. 805 (reversed without discussion of the question under consideration, 146 Fed. (2d) 774); Bowles v. Berard, 57 Fed. Supp. 94; and Everly v. Zepp, 57 Fed. Supp. 303. In Commissioner v. Heininger, 320 U. S. 467, the Supreme Court said that the courts from time to time have “narrowed the generally accepted meaning of the language used in section 23 (a) in order that tax deduction consequences might not frustrate sharply defined national or state policies proscribing particular types of conduct.” The Court ruled, however, that the taxpayer was entitled to deduct' the attorney’s fees and other expenses which he had incurred in an unsuccessful action to enjoin enforcement of a mail fraud order by which he had been denied the use of the mails for the purpose of carrying on his business. Although no penalty was involved in that case, the Court pointed out that “Where a taxpayer has violated a federal or state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment.” The Court further said that: If the respondent’s litigation expenses are to be denied deduction, it must be because allowance of the deduction would frustrate the sharply defined policies of 39 U. S. C. §§ 259 and 732, 39 U. S. O. A. §§ 259, 732, which authorize the Postmaster General to issue fraud orders. The single policy of these sections is to protect the public from fraudulent practices committed through the use of the mails. It is not their policy to impose personal punishment on violators; such punishment is provided by separate statute, and can be imposed only in a judicial proceeding in which the accused has the benefit of constitutional and statutory safe guards appropriate to trial for a crime. The policy of the Emergency Price Control Act, and OPA regulations promulgated thereunder, was not merely to protect the public from financial loss, as was the mail fraud statute referred to in Commissioner v. Heininger, supra, but was “the prevention of inflation and its enumerable consequences.” Taleus v. United States, 321 TJ. S. 414, 423. Essentially, the act was a war measure which Congress considered of vital importance to the prosecution of the war. Undoubtedly, it represented a “sharply defined” national policy “proscribing particular types of conduct.” Commissioner v. Heininger, supra. It is begging the question to say that enforcement provisions of the act authorizing the consumer or the Administrator of OPA to bring suit for treble damages for certain violations of price ceilings (sec. 205 (e)) were not penal in nature and that payments made thereunder should therefore not be disallowed for reasons of public policy. We are aware that the respondent has ruled that damages paid on or after July 31, 1942, to the United States Government or to private consumers for violations of price ceilings for which the consumers had a right of action may be treated as expense deductions, while those paid to the United States Government on account of sales made to the Government, or sales on which the Government, and not the consumer, has a right of action for damages, may not be deducted. See I. T. 3627,1943 C. B. 111. However, we are not required in this proceeding to pass upon the validity of that ruling in so far as it allows the deduction of such payments made to the United States Government on account of sales made to consumers other than the Government and on which the purchasers are not entitled to bring suit. The payment here in question was made in settlement of an action which the Government, and not the consumers, was authorized to bring and is, therefore, not deductible under the respondent’s ruling. In Commissioner v. Longhorn Portland Cement Co., 148 Fed. (2d) 276; certiorari denied, 326 U. S. 728, the Circuit Court of Appeals for the Fifth Circuit held (reversing 3 T. C. 310 on this point) that a penalty paid to the State of Texas in compromise of a suit brought by the state for violation of its antitrust laws was not deductible. The court was of the opinion that to permit the deduction would result in a partial mitigation of the penalty and would be against public policy. Both of those objections would apply against the deduction which the taxpayer seeks in this case. It is of no aid to the petitioner here that it paid the amount in dispute in compromise of the claim asserted by OPA. Even though the proof now before us in this proceeding indicates that the taxpayer may not have been guilty of any violation of price ceilings, as charged by OPA, we do not feel called upon to rule on that question here. The petitioner had ample opportunity to have the matter judicially determined at the time it was charged with the violations. It chose, instead, to pay the penalty, or damages, demanded. We think that the deduction of the amount claimed by the petitioner was properly disallowed. Reviewed by the Court. Decision will be entered for the respondent. Kern, /., concurs only in the result. Arundell and Leech, JJ., dissent.